[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12778

_____

D.C. Docket No. 8:09-cv-00087-RAL-TBM

UNITED STATES SECURITIES & EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

QUEST ENERGY MANAGEMENT GROUP, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before WILLIAM PRYOR, Circuit Judge, WOOD,* Chief District Judge, and
EDENFIELD,** District Judge.

PRYOR, Circuit Judge:

In this interlocutory appeal, we decide whether officers enjoined from taking

any action on behalf of a company may appeal, in the name of that company, the

_____

\* Honorable Lisa Godbey Wood, Chief United States District Judge for the Southern District of
Georgia, sitting by designation.
\** Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

appointment of a receiver. The district court appointed a receiver to take possession and control over Quest Energy Management Group, Inc., because the officers were funding the company with proceeds from a Ponzi scheme. In the order appointing the receiver, the district court enjoined the current officers from taking any actions on behalf of Quest and vested the receiver with the authority to "[d]efend, compromise or settle legal actions, including the instant proceeding." The officers of Quest, in the name of the company, now appeal the appointment of the receiver. 28 U.S.C. § 1292(a)(2). The officers do not appeal as shareholders or in any other individual capacity. The receiver moved to dismiss the appeal for lack of jurisdiction on the ground that the officers lack standing to appeal on behalf of the company. Because the district court enjoined the officers from taking any action on behalf of Quest, including filing this appeal, we grant the motion to dismiss.

## I.    BACKGROUND

This appeal arises out of the appointment of a receiver for a company funded by proceeds from a Ponzi scheme. The Securities and Exchange Commission sued Arthur Nadel and two of his investment management companies for operating the scheme. The district court appointed a receiver to take control of the assets of Nadel and his codefendants and instructed the receiver to move to expand the scope of the receivership if he discovered additional entities funded by proceeds

2

from the scheme. Over the course of four years, the district court granted ten motions to expand the scope of the receivership to include additional entities. One of those entities was Quest Energy Management Group, Inc., an oil and gas development company owned and operated by Paul and Jeff Downey. Quest received at least $5.1 million of fraudulent proceeds, which represented eighty percent of the initial capital for the company and, until the collapse of the scheme, thirty percent of the total capital for the company.

In its order expanding the receivership to include Quest, the district court ordered the receiver to "[d]efend, compromise or settle legal actions, including the instant proceeding, in which the Receivership Entities or the Receiver is a party, commenced either prior to or subsequent to this Order, with authorization of this Court." And the district court enjoined the officers of Quest from taking any action on behalf of the company: "Unless authorized by the Receiver, the Receivership Entities [i.e., Quest] and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Receivership Entities."

In the face of the injunction, the Downeys appealed the appointment of the receiver in the name of Quest. Because the notice of appeal listed Quest instead of the Downeys in their individual capacities, the receiver sought clarification from their attorney. In an email, the receiver confirmed, "I presume Paul and Jeff Downey seek to challenge the court's order to the extent it dispossessed them of

3

their interests in the company." Counsel for the Downeys responded that he would "clarify as appropriate." The receiver then asked, "Were you intending to appeal on Quest's behalf?" And counsel replied, "No." In a related proceeding, counsel acknowledged to a state regulatory body that the expanded receivership divested the Downeys of any authority to act on behalf of Quest: "I am counsel for Paul Downey and Jeff Downey in their *individual capacities*. The Downeys are no longer involved in, or associated with, Quest Energy as officers, directors, or employees or in any other capacity pursuant to the actions and direction of the court appointed Receiver." (Emphasis added.) Despite these representations, the Downeys never amended the notice of appeal and counsel later filed a notice of appearance purporting to represent Quest.

The receiver then filed a motion to dismiss the appeal for lack of jurisdiction on the ground that the district court had enjoined the Downeys from taking any action in the name of the company. The Downeys maintained in briefing and at oral argument that they have authority to appeal on behalf of Quest. We carried the motion with the case, and we now grant the motion and dismiss the appeal for lack of jurisdiction.

## II.    STANDARD OF REVIEW

"We review *de novo* whether we have jurisdiction . . . before addressing the merits." *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir. 2014). And

4

"[w]e review standing determinations *de novo*." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1268 (11th Cir. 2006).

## III.    DISCUSSION

Article III of the Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). Accordingly, standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *CAMP Legal Def. Fund, Inc.*, 451 F.3d at 1269 (citation and internal quotation marks omitted). To establish standing, a litigant ordinarily "must assert his own legal rights and interests" and cannot assert the rights or interests of someone else. *Warth*, 422 U.S. at 499, 95 S. Ct. at 2205. And "th[e] obligation on the court to examine its own jurisdiction," including whether the parties have standing, "continues at each stage of the proceedings." *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995).

5

Although our Court has never addressed whether former officers who are enjoined from taking any action on behalf of a company may appeal that injunction in the name of the company, we hold today that they cannot. When the district court expanded the receivership to include Quest, it forbade the Downeys from taking any action on behalf of Quest and instead vested the legal rights and interests of Quest in the receiver. Based on the plain language of that order, the Downeys lack standing to appeal in the name of Quest.

The Downeys argue that it would be "illogical" to prohibit them from appealing in the name of Quest because then only the receiver could appeal the grant of his own motion, but the Downeys misrepresent the receiver's argument. The receiver does not contend that *only* he can appeal his appointment. He suggested in his briefing and at oral argument a host of other paths that the Downeys could have pursued that would have fallen short of violating the injunction. For example, the Downeys could have "moved the District Court for leave to . . . appeal the Expansion Order in Quest's name," "ask[ed] for a . . . stay for the purpose of appealing the decision," "formally intervene[d]," or "appeal[ed] the Expansion Order in their individual capacities." *Cf. Inland Empire Ins. Co. v. Freed*, 239 F.2d 289, 292 (10th Cir. 1956) ("[W]e will assume that the directors, *who are also stockholders*, have a litigable interest in the proceedings; that they are in court by their attorney with standing to challenge the order of the District Court

6

on appeal." (emphasis added)); *Lincoln Printing Co. v. Middle W. Utilities Co.*, 74 F.2d 779, 783–84 (7th Cir. 1935) (holding that district court did not abuse its discretion when it permitted a stockholder to intervene for the purpose of appealing the denial of a petition to wind down a receivership). But the Downeys refused to pursue any of those options.

The Downeys' conduct is especially puzzling in the light of their representations to the receiver. When the receiver asked counsel for the Downeys whether they intended to file the notice of appeal on behalf of Quest, in violation of the injunction, counsel responded that they did *not* intend to file the notice on behalf of Quest and would "clarify as appropriate." Yet counsel never made any such clarification. Throughout this appeal, the Downeys have assured our Court that "[t]his appeal . . . is being brought on behalf of Quest," and that any "attempt to pretend or assert that any party other than Quest is the party making the appeal is wrong and not reflected [i]n the record[]."

The receiver relies on *Raley v. Hyundai Motor Co.*, 642 F.3d 1271 (10th Cir. 2011), to support his argument that the Downeys cannot appeal on behalf of Quest, and we agree with the approach taken by the Tenth Circuit. In considering whether an individual could appeal an adverse judgment against her guardian, the Tenth Circuit dismissed the appeal because the individual failed to establish that the court had jurisdiction to hear an appeal in her name. *Id.* at 1279. The court refused to

7

"look beyond the notice of appeal and scour the record to figure out who does and doesn't wish to appeal," *id.* at 1277, and was "loath simply to guess whether someone wishes to invoke and become subject to [its] jurisdiction," *id.* at 1278. Because "[i]t is the appellant's burden, not [the court's], to conjure up possible theories to invoke [the court's] legal authority to hear [an] appeal," the court observed that it "ha[d] no duty to follow" where "an appellant fail[ed] to lead" and dismissed the appeal. *Id.* at 1275, 1279. Like the Tenth Circuit in *Raley*, we are not satisfied that the Downeys have standing to appeal on behalf of a company over which they have no authority.

## IV.    CONCLUSION

We **GRANT** the receiver's motion and **DISMISS** the appeal for lack of jurisdiction.

8