BLACK, Circuit Judge:
I. BACKGROUND
The “employer mandate” provisions of the Patient Protection and Affordable Care Act (ACA) require certain employers to offer their employees health insurance that meets statutorily-specified minimum requirements. The ACA' imposes reporting obligations on those employers and provides for the assessment .of a tax penalty if an employer fails to provide adequate insurance.
*245 Between early 2013 and the end of June 2013, Kawa Orthodontics, LLP (Kawa) expended time and money to determine how to comply with the employer mandate. After Kawa incurred these expenses, on July 2, 2013, the U.S. Department of the Treasury (Treasury) announced it would not enforce the mandate for a transition period of one year — until the end of 2014. Treasury later extended the transition relief for certain employers, including Kawa, for a second year.
In October 2013, Kawa filed a complaint in federal district court challenging Treasury’s decision to postpone enforcement of the employer mandate. Kawa did not seek the return of the money that Kawa paid to research its upcoming obligations under the ACA. Nor did it seek the return of any money attributable to the monetary value of the time that Kawa spent in this endeavor. Rather, Kawa sought a declaratory judgment and an injunction setting aside Treasury’s transition relief. The district court dismissed the complaint, finding that Kawa lacked Article III,, standing. Kawa appeals.
II. STANDARD OF REVIEW
Whether a party has Article III standing is a jurisdictional issue, and therefore must be addressed before we may reach the merits. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S.Ct. 1858, 1861, 146 L.Ed.2d 836 (2000); see also Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir.2005) (“Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party’s claims.” (brackets and quotation omitted)). We review de novo whether plaintiffs have Article III standing. Ga. Latino Alliance for Human Rights v. Governor of Georgia, 691 F.3d 1250, 1257 (11th Cir.2012). In assessing standing on a motion to dismiss, we presume the plaintiffs “general allegations embrace those specific facts that are necessary to support the claim.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). Moreover, we “must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.” Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). We may affirm for any reason supported by the record, even if not relied upon by the district court. United States v. Al-Arian, 514 F.3d 1184, 1189 (11th Cir.2008).
III. DISCUSSION
To establish Article III standing, a plaintiff must show “(1) an injury in fact that is concrete, particularized, and either actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will redress the injury.” McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1145 (11th Cir.2014). Applying this test, we conclude Kawa lacks Article III standing to challenge Treasury’s delay of the mandate.[1] We address each element in turn.

A. Injury

In its complaint Kawa alleges Treasury’s delay in enforcing the employer mandate injured it because the delay caused Kawa *246 to “lose some, if not all, of the value of the time and resources it expended in 2013 in anticipation of the mandate going into effect on January 1, 2014.” Kawa alleges it would not have spent its time and money researching the ACA in 2013 had it known the mandate would be delayed until 2015, “but instead would have spent its time, resources, and money on other priorities.”
To satisfy the injury requirement, Kawa must show “an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite.” Ga. State Conference of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir.1999). “The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right.” Vt. Agency of Natural Res., 529 U.S. at 772, 120 S.Ct. at 1862.
The allegations in Kawa’s complaint do not state such a concrete and particularized injury. Although Kawa asserts it would have waited to research its ACA obligations, Kawa has not alleged that its ACA research is objectively worth less, or that Kawa has been actually harmed in a concrete way. See GrassRoots Recycling Network, Inc. v. E.P.A., 429 F.3d 1109, 1112 (D.C.Cir.2005) (holding a plaintiff failed to show an actual injury to challenge an EPA rule when the plaintiff alleged he “would not have purchased” a piece of property or “would have paid ... less” because the plaintiffs allegations showed only that the property was “worth less to him,” not that the property was “in fact worth less”). Therefore, as set out in its complaint, Kawa’s bare allegation that it has lost the “value of the time and resources it expended in 2013” sets out an injury that is too abstract and indefinite to confer Article III standing, particularly because the substantive requirements for complying with the employer mandate remain unchanged and Kawa is still subject to them.
The dissent characterizes Kawa’s alleged injury as the “lost two years of interest” Kawa could have accrued on the money spent in 2013 to comply with the employer mandate. However, as this appeal comes to us on a motion to dismiss, we must evaluate Kawa’s standing “based on the facts alleged in the complaint.” Shots v. Cates, 256 F.3d 1077, 1081 (11th Cir.2001). We may not hypothesize or speculate about the existence of an injury Kawa did not assert. Id. (“[W]e may not speculate concerning the existence of standing or piece together support for the plaintiff.” (quotation omitted)). Kawa’s complaint does not mention the word “interest,” let alone allege that Kawa had specific plans to invest its money into an interest-bearing asset.[2] Therefore, Kawa’s lost-interest argument is waived. See Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir.2009) (“[Ajbsent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.”).
In short, Kawa’s complaint alleges only a subjective perception that Treasury’s delay caused it harm, which is insufficient to establish Article III standing.[3]

*247
B. Causation

Even if Kawa had established a concrete and particularized injury, Kawa’s claim of standing fails on the causation requirement.
To establish causation, Kawa must demonstrate its alleged injury is “fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party .not before the court.” Lujan, 504 U.S. at 560, 112 S.Ct. at 2136 (quotation and alterations omitted). Kawa alleges its injury was caused by Treasury’s delay of the mandate. Kawa has not demonstrated its purported injury is fairly traceable to Treasury’s delay. Any injuries associated with the timing of Kawa’s compliance expenses, including any opportunity costs, are attributable to the ACA itself. Cf. Arda v. Fla. Sec’y of State, No. 12-15738, 772 F.3d 1335, 2014 WL 6235917, at *4 (11th Cir. Nov. 17, 2014), (plaintiffs who incurred costs because of Florida’s voter-removal program had standing to challenge that particular program); Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 456-57 (7th Cir.2010) (plaintiff who incurred costs because of an order requiring it to post a bond had standing to challenge bond order). Treasury played no role in determining when or how Kawa allocated its resources in preparation for the employer mandate and reporting requirements of the ACA. Therefore, Kawa cannot show causation.[4]

C. Redressability

Even if Kawa had met both the injury and causation requirements to establish standing, it cannot meet the redressability requirement. This is so because Kawa does not — and cannot[5] — seek money damages in this case, and money damages are the only relief that could redress Kawa’s alleged injury. Kawa nevertheless requests a declaratory judgment that Treasury’s transition relief violates the Administrative Procedure Act and an injunction prohibiting and setting aside the transition relief. Kawa argues an injunction would reinstate the original January 1, 2014, effective date of the mandate, and Kawa would thereby regain some or all of the value of its 2013 expenditures.
To establish redressability, “it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Lujan, 504 U.S. at 561, 112 S.Ct. at 2136 (quotation omitted). In this case, granting the requested declaratory and injunctive relief would not redress Kawa’s purported injury. Kawa would not recoup its compliance expenses or any value associated with the time and resources Kawa expended in 2013. The consequence of granting the requested relief would be to simply subject Kawa and other employers to the employer mandate tax penalties and reporting requirements. Kawa has not explained how Treasury’s enforcement of tax penalties and reporting requirements would put Kawa in any different position than Kawa is currently in *248 now, or how the requested relief will or could increase the value of the resources Kawa expended. See DiMaio v. Democratic Nat’l Comm., 520 F.3d 1299, 1303 (11th Cir.2008) (explaining a plaintiff lacked standing where the complaint did not “suggest in any way how [the] ‘injury’ could be redressed by a favorable judgment”). Therefore, Kawa has not shown redressability.[6]
IV. CONCLUSION
For the foregoing reasons, we conclude Kawa lacks Article III standing.
AFFIRMED.

. Because we conclude Kawa lacks Article III standing, we need not address whether Treasury’s decision to postpone enforcement of the employer mandate is unreviewable under § 701(a)(2) of the Administrative Procedure Act (the APA), which precludes judicial review of an agency’s action if the "agency action is committed to agency discretion by law.” 5 U.S.C. § 701(a)(2).

. Kawa's response to the motion to dismiss also makes no mention of lost interest. It was not until its initial brief before this Court that Kawa made a one-sentence passing reference to lost interest, stating only that "[a]t a minimum, Kawa Ortho could have saved its money and accrued interest on it rather than spending it on compliance with a mandate that never took effect.” Appellant Br. 16.

. Even if Kawa's complaint had alleged lost interest revenue as its injury, that would not-confer standing on it to challenge Treasury's delay. First, as explained in our discussion of causation, it was the ACA itself, not Trea *247 sury’s delay, which caused Kawa to spend money on legal research in 2013 and thereby forego the opportunity to earn interest on whatever money it spent. Second, as explained in our discussion of redressability, the only remedy that could restore Kawa’s lost interest is money, which Kawa does not seek.

. The dissent does not cite any authority for its view that Kawa’s alleged injury is fairly traceable to Treasury’s actions, but instead relies only on its characterization of Kawa’s injury.

. Damages are not available under the Administrative Procedure Act in this action. See 5 U.S.C. § 702 (authorizing actions seeking “relief other than money damages”).

. The dissent argues that an 'injunction "would end the continued injury Kawa faces from each new day of unearned interest on the money” Kawa spent on compliance in 2013. But nothing short of monetary compensation that may be invested in an interest-bearing account could stop Kawa from continuing to lose the potential interest revenue Kawa gave up in 2013 when it paid for ACA research. As explained, Kawa does not seek and cannot obtain monetary damages. And neither a declaratory judgment nor an injunction could restore to Kawa its alleged loss of time and value.