[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12082
_____

D.C. Docket No. 1:09-md-02036-JLK

In Re: Checking Account Overdraft Litigation,

THOMAS LARSEN,
resident of the State of Washington, et al.,

Plaintiffs,

MELANIE L. GARCIA, et al.,

Consolidated Plaintiffs,

CELIA SPEARS-HAYMOND,
ANTHONY SCOTT POULIN,
ALEX ZANKICH,
DELORES GUTIERREZ,
on behalf of herself and all others
similarly situated,
MARC MARTINEZ,
on behalf of himself and all others
similarly situated,

Consolidated Plaintiffs –
Appellees,

versus

CITIBANK FSB, et al.,

Defendants,

WELLS FARGO BANK, N.A.,

Defendant - Appellant,

WACHOVIA BANK, N.A.,

Consolidated Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 10, 2015)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and DUBOSE,[*] District
Judge.

TJOFLAT, Circuit Judge:

This appeal, arising from five putative class actions filed against Wells

Fargo, N.A., and its predecessor, Wachovia Bank, N.A., raises the question

_____

[*] Honorable Kristi DuBose, U.S. District Judge for the Southern District of Alabama,
sitting by designation.

2

whether Wells Fargo's[1] waiver of its right to compel arbitration of the named

plaintiffs' claims in these cases, recognized by this court in *Garcia v. Wachovia*

*Corp.*, 699 F.3d 1273 (11th Cir. 2012), should be extended to preclude Wells

Fargo from compelling arbitration of the unnamed putative class members' claims.

The District Court effectively answered that question in the affirmative when,

before ruling on class certification, it issued an order denying Wells Fargo's

conditional motions to compel arbitration of the unnamed putative class members'

claims in the event of class certification.  Because we hold that the District Court

lacked jurisdiction to resolve this question and that the named plaintiffs lack

standing to defend that resolution on appeal, we vacate the District Court's order.

I.

We borrow the following summary of the relevant background facts from

*Garcia*:

> The plaintiffs in these five separate putative class actions allege that
> Wells Fargo and Wachovia Bank unlawfully charged them overdraft fees for
> their checking accounts, which are governed by agreements that provide for
> arbitration of disputes on an individual basis.  The Wells Fargo customer
> agreement states that "[e]ither [the customer] or the Bank may require the
> submission of a dispute to binding arbitration at any reasonable time
> notwithstanding that a lawsuit or other proceeding has been commenced,"
> but that neither a customer nor the bank may consolidate disputes or

---

[1] Wachovia was acquired by Wells Fargo in January 2009 and has ceased to exist as a separate bank.  For that reason, except where clarity demands otherwise, we will refer to both banks jointly as Wells Fargo.

"include in any arbitration any dispute as a representative or member of a class." The Wachovia customer agreement states that, if either the customer or the bank requests, "any dispute or claim concerning [the customer's] account or [the customer's] relationship to [Wachovia] will be decided by binding arbitration," and that the arbitration "will be brought individually and not as part of a class action."

Wells Fargo and Wachovia are not the only banks accused of unlawfully charging checking account overdraft fees. In June 2009, the Judicial Panel on Multidistrict Litigation consolidated in the Southern District of Florida the five putative class actions involved in this appeal with dozens of similar cases filed against approximately thirty banks. This consolidated litigation has already been the subject of several appeals in this Court. *See, e.g.*, *Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269 (11th Cir. 2012); *Given v. M&T Bank Corp.*, 674 F.3d 1252 (11th Cir. 2012); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224 (11th Cir. 2012).

699 F.3d at 1275–76.

On November 6, 2009, the District Court ordered the defendant banks, including Wells Fargo, to file, by December 8, 2009, "their merits and non-merits motions directed to the operative complaints," including motions to compel arbitration. Wells Fargo did not move to compel arbitration of the named plaintiffs' claims.[2] Instead, Wells Fargo joined several other banks in filing an omnibus motion to dismiss, which the court, in large part, denied on March 11,

---

[2] Because the named plaintiffs hailed from states that took a dim view of arbitration agreements containing provisions barring class arbitration, Wells Fargo, whose agreements included such provisions, believed that moving to compel arbitration against the named plaintiffs would be futile.

4

2010.  *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1329 (S.D. Fla. 2010).

On April 14, 2010, the District Court, noting that none of the defendant banks had moved to compel arbitration by its December 8, 2009, deadline, ordered any defendant wishing to file such a motion to do so by April 19, 2010.  Wells Fargo again chose not to move to compel arbitration of the named plaintiffs' claims.  It did, however, file a statement reserving its right to compel arbitration against any plaintiffs "who [might] later join, individually or as putative class members, in this litigation," explaining that "[its] arbitration rights as to a nationwide class, for newly added plaintiffs, and/or for plaintiffs from newly added states are not yet at issue."[3]  When Wells Fargo filed its answers to the five complaints shortly thereafter, it again gave notice that it was reserving its right to arbitrate the claims of any future plaintiffs, stating that "[a]bsent members of the putative classes have a contractual obligation to arbitrate any claims they have against Wells Fargo."[4]

---

[3] Wachovia filed a similar statement declining to seek arbitration against the then-named plaintiffs but reserving its right to arbitrate any claims that might be raised by other accountholders in the future.

[4] Wachovia's answers similarly included affirmative defenses based on reservation of its right to compel arbitration with the plaintiffs, although its reservations were not limited to absent members of the putative classes.

5

For the next year the parties proceeded with discovery and motions practice as they readied for the fight over class certification, and ultimately for trial. Then, on April 27, 2011, the United States Supreme Court held that § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, preempts state-law rules voiding consumer arbitration agreements that bar classwide arbitration procedures. *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S. Ct. 1740, 1753, 179 L. Ed. 2d 742 (2011). Two days later, Wells Fargo moved the District Court to compel the named plaintiffs in the five cases to arbitrate their disputes. The District Court denied the motion, ruling that Wells Fargo had waived its right to compel arbitration vis-à-vis the named plaintiffs by failing to timely move to compel arbitration. Wells Fargo appealed, and this Court affirmed, holding that a motion to compel arbitration would not have been futile prior to *Concepcion* and that Wells Fargo had "waived its right to compel arbitration of claims brought by its customers as putative class action plaintiffs." *Garcia*, 699 F.3d at 1275.

On remand, the named plaintiffs moved for class certification. On March 4, 2013, Wells Fargo filed responses in opposition, arguing, *inter alia*, that the court should not certify a class due to lack of numerosity. Specifically, Wells Fargo contended that all customers with enforceable arbitration obligations would have to be excluded from the class, and that because all of Wells Fargo's customers had

6

signed agreements containing arbitration provisions, there would not be enough class members to make a class action viable.

At the same time Wells Fargo filed this substantive opposition to class certification, it also filed conditional motions to dismiss the claims of the unnamed, or absent class members in favor of arbitration in the event the District Court certified a class. In essence, Wells Fargo was informing the court in advance that, should the court decide to certify a class, Wells Fargo intended to move to compel arbitration with all the unnamed class members.[5]

On April 8, 2013, without ruling on the named plaintiffs' motion for certification, the District Court entered an order denying Wells Fargo's conditional motions to dismiss in favor of arbitration.[6] The court explained its decision as follows:

> In [these] cases, the Court's jurisdiction was fixed on the day the original complaints were filed. The Court had jurisdiction over the named plaintiffs and over anyone else who might ultimately be held to be a member

[5] The conditional motions stated in relevant part:

> While the Absent Class Members are not yet part of this litigation, and are therefore not currently subject to this Court's jurisdiction, this will change if this Court certifies one or more classes in response to plaintiffs' pending motion for class certification. Wells Fargo accordingly makes this arbitration motion at this time so that if the Court does certify one or more classes in these cases, it can address the arbitration obligation of the Absent Class Members at the first possible moment. If the Court declines to certify any class . . . , this arbitration motion will be moot.

[6] The named plaintiffs' motion for class certification is still pending in the District Court.

7

of that class through a successful Motion to Certify Class. Should the Court certify a class in one or more of these cases, then the class will be fixed with a definition. Should the Court rule against certifying a class, then no class would exist. Regardless of the outcome of the upcoming hearing on class certification, there cannot be "absent class members," now or after this Court has ruled on class certification.

Even accepting as true that there exist so-called absent class members in these cases, Defendant has a problem with standing. If the group against which Defendant seeks to assert a right to arbitration is not yet part of the class and thus not subject to the earlier ruling that Defendant has waived its arbitration rights, then that group has not yet brought a claim against Defendant. Therefore, Defendant lacks standing to assert anything against them. Simple logic dictates that the Court must deny these motions.

Wells Fargo subsequently moved the court to clarify that it had not denied the motions with prejudice, but as premature due to the fact that no class had yet been certified. The District Court denied Wells Fargo's motion for clarification without comment, and this appeal followed.

II.

After the named plaintiffs moved for class certification, Wells Fargo filed two types of pleadings in an effort to preserve its contractual right to seek arbitration of any claims the unnamed putative class members might have against it should the District Court certify them as members of plaintiffs' proposed class. Wells Fargo filed oppositions to the named plaintiffs' motion for class certification and simultaneously informed the District Court that it intended to move to dismiss the putative class members' claims in favor of arbitration.

8

We understand the District Court's order as effectively responding thusly: First, an Article III case or controversy does not exist between Wells Fargo and the unnamed putative class members; therefore, the court lacks jurisdiction to determine whether these members' claims are subject to arbitration. Second, the case or controversy issue aside, Wells Fargo lacks Article III standing to obtain an order declaring that the unnamed putative class members' claims are subject to arbitration. Finally, if a class is certified, the new members may benefit from Wells Fargo's waiver of its arbitration rights.

For the reasons that follow, we conclude that because a class including the unnamed putative class members had not been certified, Article III's jurisdictional limitations precluded the District Court from entertaining Wells Fargo's conditional motions to dismiss those members' claims as subject to arbitration.[7] We also conclude that, contrary to the position they take in this appeal, the named plaintiffs lack Article III standing to seek our affirmance of the District Court's provisional holding that if a class is certified, Wells Fargo will be estopped to assert its contractual rights to arbitration.[8]

---

[7] Jurisdictional issues present questions of law, which we review *de novo*. *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009).

[8] Issues of standing are also subject to *de novo* review. *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, No. 14-10296, 2014 WL 6765734, at *1 (11th Cir. Dec. 2, 2014).

9

A.

"Article III of the Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' and 'Controversies.'" *SEC v. Quest Energy Mgmt. Grp., Inc.*, 768 F.3d 1106, 1108 (11th Cir. 2014) (quoting U.S. Const. art. III, § 2). A justiciable controversy is one that "can presently be litigated and decided and [is] not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Wendy's Int'l., Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (per curiam) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)). Where a live controversy does not exist, judicial pronouncements are nothing more than "advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48, 90 S. Ct. 200, 201–02, 24 L. Ed. 2d 214 (1969) (per curiam).

Because a class had not been certified at the time Wells Fargo moved conditionally to compel arbitration of the claims of all unnamed class members, those unnamed individuals necessarily remained *putative* participants in the case. Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power. *See, e.g.*, *Smith v. Bayer Corp.*, ___ U.S. ___, ___, 131 S. Ct. 2368, 2379, 180 L. Ed. 2d 341 (2011) ("[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*." (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16, n.1, 122 S. Ct.

10

2005, 2014, 153 L. Ed. 2d 27 (2002) (Scalia, J., dissenting))); *id.* at ___, 131 S. Ct. at 2380 ("[I]n the absence of a certification under [Federal Rule of Civil Procedure 23], the precondition for binding Smith [an unnamed member of the putative class] was not met."); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006) ("The granting of class certification under Rule 23 authorizes a district court to exercise personal jurisdiction over unnamed class members who otherwise might be immune to the court's power.").

Absent class certification, there is no justiciable controversy between Wells Fargo and the unnamed putative class members. Furthermore, because the unnamed putative class members are not yet before the court, any claims that they might have against Wells Fargo necessarily exist only by hypothesis. In the absence of both live claims and cognizable plaintiffs, the District Court's pronouncement purporting to definitively foreclose the arbitration of the hypothetical claims that might be raised in the future by hypothetical plaintiffs cannot be regarded as anything but an impermissible "advisory opinion[] on [an] abstract proposition[] of law." *Hall*, 396 U.S. at 48, 90 S. Ct. at 202.

B.

The named plaintiffs admit in their principle brief that, prior to class certification, the District Court lacked jurisdiction to determine whether the putative class members could be compelled to arbitrate their claims against Wells

11

Fargo. Instead, the named plaintiffs attempt to defend the District Court's denial of Wells Fargo's conditional motions to dismiss as a non-mutual collateral estoppel holding that Wells Fargo waived its right to compel the unnamed putative class members to arbitrate their claims. Wells Fargo is estopped, so the argument goes, from compelling unnamed putative class members to arbitrate their claims because *Garcia* definitively held that Wells Fargo had waived its arbitration rights as to the named plaintiffs. This argument founders before leaving port in that the named plaintiffs lack standing to advance it on behalf of the unnamed putative class members.[9]

Standing "is the threshold question in every federal case. . . ." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's [arguments]." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005)).

---

[9] Even if the named plaintiffs *did* have standing to make a collateral estoppel or issue preclusion argument on behalf of the unnamed putative class members, the argument would fail because the issue to which the named plaintiffs would have us give preclusive effect—whether Wells Fargo had waived its rights to enforce the arbitration provisions in its contracts with the *named plaintiffs*, which *Garcia* resolved in the affirmative—is not the same as the relevant issue here: whether Wells Fargo has waived its rights to enforce the arbitration provisions in separate contracts with each of the *unnamed putative class members*. *See Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012) ("We apply issue preclusion when [] the issue at stake is identical to the one involved in the prior litigation . . . .").

12

The fundamental prerequisite for standing is that the claimant have "a personal stake in the outcome of the controversy [such] as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498–99, 95 S. Ct. at 2205 (quotation marks omitted).  One rule that follows from this principle is that a party "generally must assert his *own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499, 95 S. Ct. at 2205 (emphasis added).

A plurality of the Supreme Court has observed that there are at least two reasons behind the prudential principle that federal courts "must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." *Singleton v. Wulff*, 428 U.S. 106, 113, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976) (plurality).  First, "it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.  Second, third parties themselves usually will be the best proponents of their own rights." *Id.* at 113–14, 96 S. Ct. at 2874 (citation omitted).

This rule is not absolute, however; if the party asserting the right has a close relationship with the person who actually possesses the right, and if the possessor of the right is somehow hindered in his ability to protect his own interests, then

13

courts may grant a third party standing. *Kowalski v. Tesmer*, 543 U.S. 125, 129–30, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004).

The named plaintiffs fail to come within this exception to the general rule against third-party standing. Even if we assume that the named plaintiffs have a sufficiently close relationship with the unnamed putative class members to assert rights on their behalf, the named plaintiffs have not explained how the unnamed putative class members would be hindered in their ability to assert their own rights. We can conceive of no reason why the unnamed putative class members could not seek preclusive effect for Wells Fargo's waiver of its right to compel arbitration of their own accord if and when they become part of the case.

More fundamentally, the named plaintiffs lack standing to assert any rights the unnamed putative class members might have to preclude Wells Fargo from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question. The named plaintiffs have already received a favorable ruling as to whether Wells Fargo waived its rights to compel arbitration against them. *See Garcia*, 699 F.3d at 1277–78. Whether or not Wells Fargo is precluded from asserting arbitration rights against *other* individuals has no legal relevance to the named plaintiffs.[10]

---

[10] Of course, as a practical matter, whether Wells Fargo can compel the unnamed putative class members to arbitrate their claims may be highly relevant to the named plaintiffs, given that

14

## III.

Because the District Court lacked jurisdiction to rule on the arbitration obligations of the unnamed putative class members and because the named plaintiffs lack standing to raise any arguments on the unnamed putative class members' behalf, we VACATE the District Court's order and REMAND for further proceedings not inconsistent with this opinion.

SO ORDERED.

---

the answer to that question may effectively decide the viability of their class action as such. However that issue is properly litigated via a motion to certify a class, not in defense of a decision the District Court had no jurisdiction to make.