[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16820

_____

D.C. Docket Nos. 1:09-md-02036-JLK, 1:09-cv-23685-JLK,
1:09-cv-23834-JLK, 1:09-cv-21386-JLK

DOLORES GUTIERREZ,
on behalf of herself and all others similarly situated,
MARC MARTINEZ,
on behalf of himself and all others similarly situated,
ALEX ZANKICH,
WILLIAM RUCKER,
individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

versus

WELLS FARGO BANK, NA,

Defendant - Appellant.

_____

No. 16-16823

_____

D.C. Docket Nos. 1:09-md-02036-JLK, 1:08-cv-22463-JLK,
1:09-cv-21680-JLK

MELANIE L. GARCIA,
CELIA SPEARS-HAYMOND,
as an individual and on behalf of all others similarly situated,

Plaintiffs – Appellees,

versus

WELLS FARGO BANK, NA,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(May 10, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

This appeal arises from five class actions brought by bank customers ("Plaintiffs") alleging that their banks unlawfully charged them overdraft fees. These cases have been before this Court multiple times in recent years.[1] In this appeal, Wells Fargo appeals the District Court's denial of its motion to compel arbitration with the unnamed Plaintiffs comprising the classes. The District Court denied the motion because it found that Wells Fargo waived its arbitration rights as against those unnamed Plaintiffs. We hold that the District Court's finding of

---

[*] Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

[1] *See, e.g.*, *In re Checking Account Overdraft Litig.* (*Spears-Haymond I*), 780 F.3d 1031 (11th Cir. 2015); *Barras v. Branch Banking & Trust. Co.*, 685 F.3d 1269 (11th Cir. 2012); *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012); *Given v. M&T Bank Corp.*, 674 F.3d 1252 (11th Cir. 2012); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224 (11th Cir. 2012).

waiver with respect to the unnamed Plaintiffs was erroneous.  We therefore vacate the District Court's order.

## I.

Plaintiffs, all current or former checking account holders of Wells Fargo or Wachovia ("Wells Fargo"),[2] filed these class actions in 2008 and 2009.  Plaintiffs allege that Wells Fargo committed certain unlawful practices relating to the charging of overdraft fees.  Wells Fargo is one among dozens of banks accused of such conduct: in June 2009, the Judicial Panel on Multidistrict Litigation consolidated the class action here with numerous other cases throughout the country in which plaintiffs accused various banks of the same or similar overdraft practices.  *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1276 (11th Cir. 2012).  Wells Fargo's accounts were governed by customer agreements that provided for arbitration of disputes on an individual basis.   In relevant part, the customer agreements stated, "Either [the customer] or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced."  *Id.* at 1275.  Additionally, the customer agreements prohibited customers or Wells Fargo from consolidating any disputes or "includ[ing] in any arbitration any dispute as a representative or member of a class."  *Id.*

---

[2] Wells Fargo acquired Wachovia in January 2009, and Wachovia no longer operates as a separate bank.  Accordingly, we refer to both banks jointly as "Wells Fargo."

3

After the cases were consolidated in late 2009, the District Court on November 6, 2009, ordered all of the defendant banks to file all "merits and non-merits motions directed to the operative complaints," including motions to compel arbitration, by December 8, 2009. Wells Fargo did not move the named Plaintiffs to arbitrate their claims. Instead, it joined several other banks in filing an omnibus motion to dismiss.[3]

On April 14, 2010, the District Court observed that only a handful of the defendant banks had moved to compel arbitration prior to its December 8, 2009 motions deadline. Accordingly, the Court ordered any defendant who intended to seek arbitration to file a motion to compel by April 19, 2010. In response, Wells Fargo filed a reply to the Court's order which stated that it would not seek to compel arbitration with the named Plaintiffs but wished to reserve its arbitration rights against any plaintiffs "who [might] later join, individually or as putative class members, in this litigation." Wells Fargo explained that its "arbitration rights as to a nationwide class, for newly added plaintiffs, and/or for plaintiffs from newly added states are not yet at issue."[4] Subsequently, Wells Fargo filed its answers to the five complaints. In each of its five answers, Wells Fargo alleged

---

[3] The District Court largely denied the motion on March 11, 2010. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1329 (S.D. Fla. 2010).

[4] Wachovia filed a similar statement declining to seek arbitration against the named Plaintiffs but reserving its right to arbitrate any claims which might be raised by other accountholders in the future.

4

that "[a]bsent members of the putative classes have a contractual obligation to arbitrate any claims they have against Wells Fargo."

Thereafter, the case proceeded toward class certification. The parties commenced class-related discovery and motions practice, which continued for about one year. Then, on April 27, 2011, the Supreme Court held that § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, preempts state-law rules voiding consumer arbitration agreements that bar class-wide arbitration procedures. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351–52, 131 S. Ct. 1740, 1753 (2011).

This decision prompted Wells Fargo to reconsider its arbitration strategy. Two days after the Supreme Court issued its opinion in *Concepcion*, Wells Fargo moved to compel the named Plaintiffs to arbitrate their disputes. The District Court denied the motion, finding that Wells Fargo waived its arbitration rights as against the named Plaintiffs by failing to timely move to compel arbitration prior to extensive discovery and litigation proceedings. Wells Fargo appealed on the basis that moving to compel arbitration against the named Plaintiffs prior to *Concepcion* would have been futile. This Court affirmed the District Court's decision, holding that a motion to compel arbitration would not have been futile prior to *Concepcion* because the question of whether federal law preempted state laws that voided class-wide arbitration provisions was merely unsettled, not squarely adverse to Wells Fargo's rights. *Garcia*, 699 F.3d at 1275.

5

On remand, the named Plaintiffs moved the District Court to certify the class. Wells Fargo opposed certification. Among other arguments, Wells Fargo contended that a lack of numerosity existed because all customers bound by enforceable arbitration provisions would have to be excluded from the class and, because all of Wells Fargo's customers had signed such provisions, there simply would not be enough class members to make a class action viable.

At the same time it filed its opposition to class certification, Wells Fargo filed conditional motions to compel arbitration against the unnamed class members in the event the District Court certified the class.[5] On April 8, 2013, without ruling on the named Plaintiffs' motion for class certification, the District Court denied Wells Fargo's conditional motions to compel arbitration. Wells Fargo appealed, and we vacated the decision. *In re Checking Account Overdraft Litig.* (*Spears-Haymond I*), 780 F.3d 1031, 1037–39 (11th Cir. 2015). We held that because no class including the unnamed putative class members had been certified, the District Court "lacked jurisdiction to rule on the arbitration obligations of the unnamed putative class members," and further that the named Plaintiffs lacked third-party

---

[5] The conditional motions stated in relevant part:

> While the Absent Class Members are not yet part of this litigation, and are therefore not currently subject to this Court's jurisdiction, this will change if this Court certifies one or more classes in response to plaintiffs' pending motion for class certification. Wells Fargo accordingly makes this arbitration motion at this time so that if the Court does certify one or more classes in these cases, it can address the arbitration obligation of the Absent Class Members at the first possible moment. If the Court declines to certify any class . . . , this arbitration motion will be moot.

6

standing to assert waiver or other arguments against arbitration on behalf of the unnamed putative class members. *Id.*

On remand, the District Court granted Plaintiffs' motion for class certification. Immediately thereafter, Wells Fargo moved to compel arbitration as to the *unnamed* class members. The District Court denied that motion, holding that Wells Fargo had waived its rights to demand arbitration as to the unnamed class members because it "acted inconsistently with its arbitration rights" during its pre-certification litigation efforts" and "significant prejudice would result" if the Court were to permit Wells Fargo to invoke arbitration.[6] Wells Fargo timely appealed.

## II.

## A.

We review the District Court's denial of a motion to compel arbitration *de novo*. *Garcia*, 699 F.3d at 1277. Like any other contractual right, "[t]he right to arbitrate can be waived." *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986). However, "because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam) (internal quotation marks omitted) (alteration accepted). We conduct a two-part inquiry to determine whether a party has waived its arbitration rights. First, we consider whether "under

---

[6] The District Court added that Wells Fargo's motions were "untimely" because they did not meet the deadlines set by the Court earlier in the litigation.

the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002) (internal quotation marks omitted).  A key factor in deciding this is whether a party has "substantially invoke[d] the litigation machinery prior to demanding arbitration." *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (internal quotation marks and alterations omitted).  Second, if a party has done so, we consider whether the party's conduct "has in some way prejudiced the other party." *Ivax*, 286 F.3d at 1316 (internal quotation marks omitted).  In considering the amount, if any, of prejudice imposed on the plaintiffs, "we may consider the length of delay in demanding the arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors*, 906 F.2d at 1514.

Careful examination of our precedent reveals that the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process.  Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime.  The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its

8

prospects of victory in litigation dim.  Allowing such conduct would ignore the very purpose of alternative dispute resolution: saving the parties' time and money.[7]

From this purpose, we can deduce that the key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them.  If the court and the opposing party have such notice at an early stage in litigation, they can manage the litigation with this contingency in mind.  For example, if the court knows a party has potential arbitration rights that could throw the case out of court, it can limit the scope of early discovery with this possibility in view, in order to avoid significant expenditures if it turns out that the arbitration provision governs.[8]  Accordingly, fair notice at a relatively early stage of litigation is a primary factor in considering whether a party has acted consistently with its arbitration rights.

---

[7] *See Concepcion*, 563 U.S. at 344–45, 131 S. Ct. at 1749 ("The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute.  It can be specified, for example, that the decisionmaker be a specialist in the relevant field, or that proceedings be kept confidential to protect trade secrets.  And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution.").

[8] This is especially true in a class action like this one, which could involve innumerable plaintiffs and extensive discovery.  In such cases, early notice of arbitration rights works in tandem with the class-certification process to avoid the accrual of heavy litigation costs while the class is still putative.  Federal Rule of Civil Procedure 23(c) encourages courts to rule on class certification "at an early practicable time."  Thus, both the arbitration-waiver doctrine and Rule 23's exhortation to rule on certification further the purpose of avoiding wasteful expenditures of time and money by nudging the district court to decide on class certification and arbitration before the scope of discovery is expanded to its fullest extent.

B.

Applying this analysis to the instant case, we conclude that Wells Fargo did not act inconsistently with its arbitration rights as to the unnamed Plaintiffs. Its conduct with respect to the unnamed Plaintiffs differed starkly from its conduct as to the named Plaintiffs. [9] It stated expressly in its response to the District Court's scheduling order that it did not plan to seek arbitration with the named Plaintiffs, and it thus joined other defendants in filing an omnibus motion to dismiss the complaints. In that same response, however, which it filed well before any discovery had been conducted, Wells Fargo explained to the District Court that it was not in a position to assert its arbitration rights against the unnamed Plaintiffs but wished to preserve those rights for when the matter became ripe for the Court to consider them:

> However, Wells Fargo reserves its rights to enforce its applicable contractual dispute resolution procedures, including its right to

---

[9] For this reason, our decision in *Garcia*, which held that Wells Fargo acted inconsistently with its arbitration rights as to the *named* Plaintiffs, does not control our decision as to the unnamed Plaintiffs. Nor can Plaintiffs invoke *Garcia* to claim collateral estoppel or issue preclusion to support a finding of waiver with respect to the unnamed Plaintiffs. As we noted in our prior opinion in this case, such arguments

> would fail because the issue to which the named plaintiffs would have us give preclusive effect—whether Wells Fargo had waived its rights to enforce the arbitration provisions in its contracts with the *named plaintiffs*, which *Garcia* resolved in the affirmative—is not the same as the relevant issue here: whether Wells Fargo has waived its rights to enforce the arbitration provisions in separate contracts with each of the *unnamed putative class members*.

*Spears-Haymond I*, 780 F.3d at 1038 n.9. This is because issue preclusion applies only when "the issue at stake is identical to the one involved in the prior litigation." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012).

> compel arbitration, against other customers that were recently joined as plaintiffs in the *Gutierrez*, *Martinez* or *Zankich* matters or who later join, individually or as putative class members, in this litigation against Wells Fargo. . . .
>
> At this time Wells Fargo does not know whether other contractual dispute resolution procedures issues may arise in this proceeding with respect to any other customers. Wells Fargo's arbitration rights as to a nationwide class, for newly added plaintiffs, and/or for plaintiffs from newly added states are not yet at issue. To the extent such issues do arise in the future, Wells Fargo does not waive its rights to enforce its contractual dispute resolution procedures, including its right to compel arbitration where appropriate, by not joining in the motions currently pending before the Court.

Shortly after that, it also cited the parties' arbitration agreements as an affirmative defense in its answers to Plaintiffs' complaints. Fairly read, these actions had the effect of putting both the Court and Plaintiffs on notice of Wells Fargo's arbitration rights against the unnamed Plaintiffs and its intent to invoke them.

Nevertheless, in finding that Wells Fargo waived its arbitration rights against the unnamed Plaintiffs, the District Court relied heavily upon Wells Fargo's failure to move to compel the unnamed class members to arbitrate their claims after the Court set a deadline to file merits and non-merits motions of December 8, 2009 and a deadline to join in with other defendants who filed arbitration-related motions by April 19, 2010. Implicit in this analysis is the conclusion that Wells Fargo's failure to do so signaled to the Court and Plaintiffs that it would not seek arbitration with respect to the unnamed class members. An immediate problem with this is that both orders were unclear with regard to whether motions were due

with respect to unnamed, putative class members.  In fact, the first order suggested the opposite.  It stated:

> On or before December 8, 2009, Defendants Wachovia Bank, National Association, Bank of America, N.A., U.S. Bank National Assocation, JPMorgan Chase Bank, N.A., Wells Fargo and Union Bank shall file their merits and non-merits motions *directed to the operative complaints on file . . . .*

(Emphasis added).  At this point, the class had not been certified; hence, the class was still putative and its potential members remained unidentified.  As a result, their complaints were not yet "on file."

Moreover, the Court's order of April 19 did not mention the unnamed class members.  The order simply invited any defendants who had not yet filed motions to compel arbitration "to join in and be heard on the motions to compel arbitration" filed by some defendants.  To add to the uncertainty, at the time the Court issued this order, the few motions to compel arbitration that had been filed were directed at *named* plaintiffs.  And multiple defendants in addition to Wells Fargo and Wachovia responded to the Court's order by announcing they would not seek arbitration with respect to the named Plaintiffs in their cases but wished to reserve their arbitration rights as against future plaintiffs that might join the litigation later. Each indicated that asserting or foregoing arbitration rights as to those plaintiffs was unripe at that point.  Plaintiffs did not object to these responses, and the Court did not respond to them.  Given this uncertainty, Wells Fargo's choice to inform

12

the Court it would not seek to compel the named Plaintiffs to arbitrate but wished to reserve its options with regard to the unnamed Plaintiffs can hardly be said to have been inconsistent with its contractual arbitration rights.

Putting the ambiguity of the District Court's orders aside, it cannot be said that Wells Fargo's failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified. As we held in *Spears-Haymond I*, the District Court lacked jurisdiction to rule on any such motions. 780 F.3d at 1034. For another, the unnamed class members were *putative* at that point. Class certification is the action that concretely identifies the plaintiffs; before that point, any plaintiffs beyond those named in the complaint are speculative and beyond the reach of the Court's power. *Id.* at 1037. So Wells Fargo would not even have been able to identify the specific plaintiffs against which it planned to seek arbitration, much less ascertain its arbitration-related rights as to them. Thus, framing an effective motion to compel arbitration was impossible.

As a result, by ordering Wells Fargo to move to arbitrate claims not yet brought or else waive them, the District Court put Wells Fargo squarely between Scylla and Charybdis. The Court's scheduling order demanded one of two

possible courses of action only.  The first was a shotgun motion to compel in which Wells Fargo would have made speculative arguments about speculative customer agreements made with speculative plaintiffs, a document that could not have provided any cognizable basis upon which the District Court could have ruled (even assuming it had jurisdiction to rule—it did not).  The second was what happened here: a failure by Wells Fargo to raise those motions, and, according to the District Court's analysis, a consequent waiver of its contractual arbitration rights altogether.

But, said the District Court, "Wells Fargo could have moved to compel arbitration at the outset as to the named Plaintiffs, which if successful would have had the practical effect of extinguishing the unnamed class members' claims."  The District Court further stated that Wells Fargo "might have, at the outset, put the parties and the Court on notice—through filing a conditional motion, like the one the Bank ultimately filed years later in 2013, or some other clear statement of its intent—that it intended to request arbitration as to the unnamed class members if and when the class was certified."  But we have found no authority that requires a party to file a conditional arbitration motion against possible future adversaries—at a juncture in which adjudicating, much less exercising jurisdiction over, those claims is impossible—in order to avoid waiving its rights with regard to those parties.  Because the District Court lacked jurisdiction over such motions until the

14

class was certified, such a placeholder document could only serve the purpose of putting the Court and the parties on notice of the moving party's intent to invoke its arbitration rights upon certification of the class. But that same purpose was served by Wells Fargo's express reservation of its arbitration rights as to future plaintiffs in response to the Court's scheduling order. Accordingly, we conclude that Wells Fargo did not act inconsistently with its arbitration rights, and, consequently, it did not waive those rights.[10]

### III.

We accordingly vacate the District Court's order and remand the case for further proceedings not inconsistent with this opinion.

**SO ORDERED.**

---

[10] Because we hold accordingly, we need not and do not address prejudice, the second prong of the waiver inquiry.