[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14097

_____

D.C. Docket Nos. 1:09-md-02036-JLK; 1:08-cv-22463-JLK


In re: Checking Account Overdraft Litigation

1:09-md-02036-JLK

THOMAS LARSEN, et al.,

Plaintiffs,


MELANIE L. GARCIA,
CELIA SPEARS-HAYMOND,
DELORES GUTIERREZ,
MARC MARTINEZ,
ALEX ZANKICH,

Plaintiffs - Appellants,

versus

CITIBANK FSB, et al.,

Defendants,


WELLS FARGO BANK N.A.,
WACHOVIA BANK, N.A.,
WACHOVIA CORPORATION,

Defendant - Appellee.

_____

1:08-CV-22463-JLK

MELANIE L. GARCIA,

Plaintiff - Appellant,

Versus

WACHOVIA BANK, N.A..,

Defendant - Appellee.

_____

1:09-cv-21680-JLK

CELIA SPEARS-HAMMOND,
as an individual, and on behalf of all others similarly situated,

Plaintiff - Appellant,

versus

WACHOVIA CORPORATION,
WACHOVIA BANK N.A.,

Defendants - Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 7, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

WILSON, Circuit Judge:

This case presents the question whether, in light of arbitration agreements contained in two contracts, the district court properly dismissed the claims of unnamed members of five class actions in favor of individual arbitration. The parties—on one side, a bank, and, on the other side, five classes made up of former and current customers of the bank—dispute the enforceability of arbitration clauses contained in their account agreements. After careful review, we find that arbitration is appropriate, and affirm the district court.

## I.   Background

Plaintiffs are members of five class actions filed against Wells Fargo Bank, N.A., for itself and its predecessor, Wachovia Bank, N.A.[1] Each complaint challenges alleged practices of Wells Fargo relating to overdraft fees. Plaintiffs allege that such practices breached the covenant of good faith and fair dealing under their respective account agreements—either the Wells Fargo Consumer Account Agreement (Wells Fargo Agreement) or the Wachovia Deposit Agreement (Wachovia Agreement).[2] This issue has yet to be addressed, and we

---

[1] Wells Fargo acquired Wachovia in January 2009. Wachovia has since ceased to exist as a separate bank. For that reason, we refer to both banks jointly as Wells Fargo.
[2] Wells Fargo is not alone in having been accused of unlawful overdraft-fee practices. The Judicial Panel on Multidistrict Litigation consolidated these five class actions with dozens of similar cases filed against approximately thirty banks. *In re Checking Acct. Overdraft Litig.*, 626

will not address it here because this case is about arbitration—specifically, about

the enforceability of the arbitration clauses contained in the Wells Fargo and

Wachovia Agreements.

In relevant part, the Wells Fargo Agreement reads:

> **Dispute Resolution Program: Arbitration Agreement**
> This section constitutes the Arbitration Agreement between you and the Bank.
>
> **Non-Judicial Resolution of Disputes**
> If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process. **You understand and agree that you and the Bank are each waiving the right to a jury trial or a trial before a judge in a public court.**
>
> **Disputes**
> . . . A dispute . . . includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement. . . .
>
> **Binding Arbitration**
> . . . .
>
> Each arbitration, including the selection of the arbitrator shall be administered by the American Arbitration Association (AAA), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes . . . . To the extent that there is any variance between the AAA Rules and this

---

F. Supp. 2d 1333 (U.S. Jud. Pan. Mult. Lit. 2009).  The case before us is just the latest installment in a series of appeals concerning this multidistrict litigation (MDL).

Arbitration Agreement, this Arbitration Agreement shall control. . . .

In relevant part, the Wachovia Agreement reads:

> **25.    Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions.**  If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. . . . Each party will pay its own costs and attorney's fees. . . .
>
> . . . The arbitration or trial will be brought individually and not as part of a class action.  If it is brought as a class action, it must proceed on an individual (non-class, non-representative) basis.   YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.
>
> . . . .
>
> **31.    Changing this Agreement.**  We have the right to change the terms of this Agreement . . . . We will notify you in writing at least thirty calendar days before the change will take effect if the change is not in your favor.

Notably, the arbitration clauses require individual, nonclass arbitration of any disputes concerning the customer's account.  In the agreements, the clauses are set off by a heading in bolded type and listed in the tables of contents.  The Wells Fargo Agreement contains a delegation clause, delegating to the arbitrator "any

disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this Arbitration Agreement."  Both agreements incorporate the American Arbitration Association's (AAA) Commercial Financial Disputes Arbitration Rules, and in the case of the Wells Fargo Agreement, the Supplemental Procedures for Consumer Related Disputes (AAA Rules).

Wells Fargo invoked the arbitration clause from each agreement and filed a motion to dismiss the claims of the unnamed class members—i.e., all members of the certified class other than the named Plaintiffs—and compel arbitration.[3] Plaintiffs opposed the motion and argued that the arbitration clauses in the Wells Fargo and Wachovia Agreements are illusory and unconscionable, and therefore unenforceable.  The district court rejected Plaintiffs' arguments and dismissed the claims of the unnamed class members without prejudice to the right of any unnamed class member to bring his or her claim in an individual arbitration according to the terms of the applicable contract.

With respect to the Wells Fargo Agreement, the district court did not reach the question of whether the arbitration clause was illusory and/or unconscionable.

---

[3] This is the third time Wells Fargo renewed its motion to dismiss and compel arbitration, making this appeal the fourth of the parties' arbitration-related appeals we have heard.  *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012); *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031 (11th Cir. 2015); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018).

The court found that the delegation clause delegates to the arbitrator all questions of arbitrability, including Plaintiffs' challenge to the enforceability of the arbitration clause. In other words, the district court determined that it was up to the arbitrator—not the court—to determine whether the parties must arbitrate. Because the Wachovia Agreement does not contain a delegation clause, the district court did decide whether the arbitration clause in the Wachovia Agreement is illusory and/or unconscionable. Applying Eleventh Circuit precedent, the court found that it is neither.

On appeal, Plaintiffs contest both determinations.[4] First, they argue that the district court erred because the delegation clause in the Wells Fargo Agreement only assigns two arbitrability issues to the arbitrator—and Plaintiffs' challenge to the enforceability of the agreement is not one of them. Second, they argue that the district court improperly took a "one-size-fits-all" approach when it analyzed the enforceability of the Wachovia Agreement pursuant to Eleventh Circuit caselaw. Plaintiffs contend that the district court should have conducted a state-by-state analysis when considering if the arbitration clause is illusory or unconscionable. To this end, Plaintiffs claim that the district court should have focused on the laws

---

[4] Plaintiffs advance a third argument that Wells Fargo waived its arbitration rights. We already held in *Gutierrez*, that Wells Fargo appropriately preserved its arbitration rights as to the unnamed class members. *See generally* 889 F.3d 1230. While we decided that case on different grounds, Plaintiffs concede that they presented the exact same argument in *Gutierrez* that they make here. We see no reason to revisit the issue and maintain that Wells Fargo has not waived its right to invoke arbitration.

of the District Columbia and other relevant states where Wells Fargo conducted business in considering these issues. We address each argument in turn.

## II.    Standard of Review

We review de novo a district court's order granting a motion to compel arbitration. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1293 (11th Cir. 2014). We also review de novo a district court's interpretation of an arbitration provision. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011).

## III.    The Wells Fargo Agreement

We start with the Wells Fargo Agreement. Plaintiffs argued before the district court that the contract's arbitration clause is unconscionable, and thus the court could not enforce it. The district court did not reach this issue because the delegation clause delegates all questions of arbitrability—or gateway issues—to the arbitrator. Plaintiffs disagree, arguing that their claim—that the arbitration clause is unenforceable—is not governed by the delegation clause. Therefore, Plaintiffs contend, the delegation clause does not require them to arbitrate this specific gateway issue.

"Arbitration is a matter of contract and of consent." *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018). Arbitrators can resolve disputes in arbitration only because the parties have agreed to do so in advance. *Id.* Where parties have

8

agreed to arbitrate certain questions, it is the duty of the court to enforce that agreement. *Id.* at 929. But the court may not require arbitration beyond the parties' agreement. *Id.* So it must use caution when requiring parties to arbitrate gateway issues. "A party often might not focus . . . upon the significance of having arbitrators decide the scope of their own powers." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Therefore, we presume that it is up to the court to decide arbitrability, unless the parties "clearly and unmistakably" provide that the arbitrator should decide arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

We have repeatedly ruled that the reference or incorporation of AAA Rules with language providing that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" demonstrates a clear and unmistakable intent that the arbitrator should decide all questions of arbitrability. *See JPay*, 904 F.3d at 938–39 (alteration adopted) ("[W]e read an arbitration agreement incorporating AAA rules containing this language as clear and unmistakable evidence that the parties contracted around the default rule and intended to delegate questions of arbitrability to the arbitrator."); *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233 (11th Cir. 2018) ("The parties' agreement plainly chose AAA rules [containing this language]. . . . [T]his is clear and unmistakable evidence that

the parties chose to have an arbitrator decide whether their agreement provided for class arbitration."); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("When the parties incorporated into the 2007 contract the [AAA Rules containing this language], they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator."); *Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327 (11th Cir. 2005) ("[T]he parties have agreed that the arbitrator will answer this [gateway] question by providing . . . that 'arbitration shall be conducted in accordance with the [AAA Rules].'").

Our caselaw is dispositive here.  Plaintiffs and Wells Fargo clearly and unmistakably agreed to arbitrate all gateway issues.  The Wells Fargo Agreement explicitly incorporates commercial AAA Rules: "Each arbitration, including the selection of the arbitrator shall be administered by the [AAA], according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes."  Further, those commercial AAA Rules specifically provide that the arbitrator will decide questions of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[5]  This alone is sufficient for us to find the requisite clear and unmistakable intent to arbitrate arbitrability.

---

[5] Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a).

10

Plaintiffs raise four arguments in support of their theory that the delegation clause does not apply to all gateway issues, and importantly, does not apply to the gateway issue at hand. However, we do not find them persuasive. First, Plaintiffs argue that the incorporation is ineffective because the agreement incorporates commercial AAA Rules rather than consumer AAA Rules. But we have been willing to accept the incorporation of *any* AAA Rules so long as they contain the proper language as clear and unmistakable evidence of an agreement to arbitrate gateway issues. *See, e.g.*, *JPay*, 904 F.3d at 937 (noting that we do not "interrogate which specific AAA rules were incorporated through the contract's general incorporation language"). As such, our precedent compels that we construe the delegation clause in the Wells Fargo Agreement as a clear and unmistakable intent to delegate to the arbitrator questions of arbitrability.

Second, relying on an out-of-circuit, unpublished district court decision, Plaintiffs contend that incorporation of AAA Rules is "insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016). However, we have never distinguished between agreements involving sophisticated and unsophisticated parties, and those involving only sophisticated parties; in fact, our precedent includes cases about agreements involving unsophisticated parties. *See generally, e.g.*, *JPay*, 904 F.3d 923 (incorporation of

11

the AAA Rules signaled clear and unmistakable intent to arbitrate arbitrability issues arising between a money-transfer vendor and its customers); *Spirit Airlines*, 899 F.3d 1230 (incorporation of AAA Rules signaled clear and unmistakable intent to arbitrate arbitrability issues arising between a major airline company and its customers).

Third, Plaintiffs argue that the incorporation of the AAA Rules cannot overcome the plain language of the delegation clause, which limits the arbitrability of gateway issues to only two specific instances: "[A]ny disagreement about [1] the meaning of this Arbitration Agreement, and [2] whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this Arbitration Agreement." This, Plaintiffs contend, expressly contradicts and creates tension with AAA Rules. However, we see no direct conflict between the two. Nothing in the Wells Fargo Agreement explicitly excludes or contradicts anything included in the AAA Rules. Read together, we view the incorporation and delegation clause as "mutually reinforcing methods of delegation." *JPay*, 904 F.3d at 941. We have already said that the incorporation of the AAA Rules was enough to indicate the parties' clear and unmistakable intent to arbitrate gateway issues. Now, that incorporation, coupled with the delegation clause, proves to be more than enough.

Finally, Plaintiffs argue that the delegation clause is unconscionable and therefore unenforceable. Because the Wells Fargo Agreement delegates issues of

12

interpretation, scope, and enforceability to the arbitrator, we only retain jurisdiction over challenges directed specifically at that delegation. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Where a plaintiff's only challenge applies to the arbitration agreement more broadly, we leave those challenges to the arbitrator. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). As the district court properly noted, "Plaintiffs do not identify any specific defect in the delegation clause and instead argue only that it is unconscionable 'for the same reasons' as the contract more generally." Without Plaintiffs pointing to any specific deficiencies in the delegation clause, we find no reason to deem it unconscionable. Plaintiffs may take up their challenges to the contract as a whole with the arbitrator.

## IV.   The Wachovia Agreement

We now turn to the Wachovia Agreement. Because the Wachovia Agreement contains no delegation provision like the one in the Wells Fargo Agreement, the district court considered whether the arbitration clause was illusory and/or unconscionable, ultimately determining it was neither.

### A.   Illusoriness

Plaintiffs argue that the Wachovia Agreement is illusory because it unilaterally empowers Wells Fargo to modify or delete the arbitration clause. However, the Wachovia Agreement only authorizes Wells Fargo to change the

13

terms of the agreement so long as it "notif[ies] [Plaintiffs] in writing at least thirty calendar days before the change will take effect if the change is not in [their] favor." In other words, Wells Fargo can make no changes to the agreement that would disadvantage Plaintiffs without first providing 30-days' notice of such change. During that time, Plaintiffs could opt out of the contract by closing their bank account.

In another decision from this MDL, we held that similar notice protections defeated arguments that an arbitration clause was illusory. *See Larsen v. CitiBank, FSB*, 871 F.3d 1295 (11th Cir. 2017). In *Larsen*, we considered an account agreement where the bank "reserve[d] the right to change or add to the terms and conditions of [the] Agreement or change the terms of [plaintiffs'] Account[s] at any time." *Id.* at 1317. Per the agreement, the bank would provide "notice of the change as [it] determine[s] appropriate." *Id.* The *Larsen* court interpreted the modification language as "specifically obligat[ing] [the bank] to provide consumers with notice prior to making any amendment." *Id.* at 1321. Even though the bank had discretion to determine what notice period was "appropriate," its "commitment to provide notice [was] accompanied by an implied duty of good faith and fair dealing." *Id.* And so we found that the bank's "power to amend the Provision [was] therefore not unfettered, unlimited, or absolute." *Id.*

14

Here, the modification provision's notice requirement demands more from the bank than the notice requirement in *Larsen*. Rather than "appropriate" notice, Wells Fargo must provide 30-days' notice of any changes to the terms of the agreement. Having already found that "appropriate" notice was enough, we can confidently say that the 30-days' notice protection is more than enough to overcome the argument that the Wachovia Agreement is illusory. This is true even though the Wachovia Agreement affords the bank discretion as to when it must provide notice. Like the agreement in *Larsen*, and any contract for that matter, the Wachovia Agreement is subject to an implied duty of good faith and fair dealing. And so Wells Fargo's power to change the terms is not "unfettered, unlimited, or absolute." *Id.*

However, Plaintiffs argue that *Larsen* is inapplicable. They allege the Wachovia Agreement is illusory under the laws of California, Colorado, the District of Columbia, Maryland, Nevada, Tennessee, and Texas—and the district court failed to conduct a thorough state-by-state analysis before determining the Wachovia Agreement was not illusory. We have held that "choice of law questions can be avoided if the laws of the different jurisdictions lead to identical results." *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 n.2 (11th Cir. 1990). So applying *Larsen* is only problematic if the relevant jurisdictions' laws would turn up different results. But Plaintiffs do not demonstrate how state-

specific analyses would result in different outcomes. Accordingly, we do not find that it was improper for the district court to rely on *Larsen* to conclude that the modification provisions in the Wachovia Agreement do not render the contract illusory. To the contrary, we agree with the court's well-reasoned, albeit brief, analysis of precedent from the relevant states, which actually confirms this conclusion.

B. Unconscionability

Plaintiffs argue that the Wachovia Agreement is also unenforceable because it is unconscionable. As a preliminary matter, while these issues of unconscionability are state-law matters, Plaintiffs have not shown that the state laws that would apply here differ in any material respect from those addressed in prior Eleventh Circuit decisions. *See id.* As such, we measure conscionability against those cases.

1. Procedural Unconscionability

To start, Plaintiffs allege several theories of procedural unconscionability. But binding caselaw and decisions from this MDL have already rejected Plaintiffs' arguments. First, Plaintiffs argue that the arbitration clause is procedurally unconscionable because it is the product of a gross disparity in bargaining power. However, "[a]s the Supreme Court has recognized, '[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements

are never enforceable.'" *In re Checking Acct. Overdraft Litig. MDL No. 2036* (*Hough*), 672 F.3d 1224, 1229 (11th Cir. 2012) (per curiam) (alteration in original) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). And we further noted in *Hough* that the disparity in bargaining power must result in a contract that is "so one-sided that no sane man not acting under a delusion would make and that no honest man would participate in the transaction." *Id.* (internal quotation marks omitted). The arbitration clause in the Wachovia Agreement—nearly identical to the one in *Hough*—"falls well short of this standard." *Id.*

Additionally, Plaintiffs argue that the arbitration clause is procedurally unconscionable because it was "buried" in a lengthy agreement "consisting of small print legalese." But also in *Hough*, we rejected the notion that the arbitration clause was "not conspicuous because it was buried on the twenty-first page of a forty-three page, single-spaced document and in a maze of fine print." *Id.* That was because there were "other aspects of the document that made apparent the agreement to arbitrate." *Id.* The same is true here: the Wachovia Agreement specifically identifies the arbitration by including it in the table of contents and using a prominent heading.

Last, Plaintiffs argue that the clause is procedurally unconscionable because it is a take-it-or-leave-it proposition offering no opportunity to opt out of arbitration. We have previously stated that a contract is not procedurally

17

unconscionable simply because it is a contract of adhesion.  *See, e.g.*, *id.* ("take-it-or-leave-it" contract was not per se procedurally unconscionable); *Larsen*, 871 F.3d at 1310 (same).  Additionally, we have already rejected the argument that "a consumer may not be bound by a term contained within a standardized adhesion contract merely because he has not been offered an opportunity to opt out of that provision."  *Larsen*, 871 F.3d at 1311–12.  For these reasons, we find that the Wachovia Agreement is not procedurally unconscionable under our precedent.

2.   Substantive Unconscionability

Next, Plaintiffs argue substantive unconscionability.  Plaintiffs first argue that the Wachovia Agreement is substantively unconscionable because it requires customers to pay Wells Fargo's attorney's fees and allows Wells Fargo to deduct those fees from customers' accounts without notice.  But the only place where the Wachovia Agreement calls for customers to pay attorney's fees is a clause governing conflicts and disputes involving the account—not the arbitration clause. The arbitration clause explicitly states that "[e]ach party will pay its own costs and attorney's fees."  There is no fee shifting when it comes to arbitration—so there is no fee-shifting argument to be made.[6]

---

[6] Even if the fee-shifting provision in the conflicts-and-dispute clause was unconscionable, it is severable.  Thus the arbitration provision would be enforceable regardless.  *See In re Checking Acct. Overdraft Litig. MDL No. 2036* (*Barras*), 685 F.3d 1269, 1274 (11th Cir. 2012) (finding that an unconscionable cost-and-fee-shifting provision did not apply to the arbitration provision and was therefore severable).

18

Finally, Plaintiffs argue that the Wachovia Agreement is substantively unconscionable because it leaves consumers facing "insurmountable filing fees" as a condition of initiating arbitration. The AAA, however, charges no filing fee for consumers to arbitrate monetary claims against a company, and it caps the arbitrator fee at $125.[7] Furthermore, Plaintiffs have not shown that the unnamed class members would be unable to pay other arbitration-related fees. *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255 (11th Cir. 2003) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)) ("Under *Green Tree*, [the plaintiff] has an obligation to offer evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees."). Without directing us to evidence of that inability to pay, Plaintiffs have not shown that the alleged "insurmountable filing fees" would render the Wachovia Agreement substantively unconscionable.

## V.    Conclusion

To conclude, we find no error on the part of the district court for two reasons. First, the delegation clause in the Wells Fargo Agreement delegates all gateway issues, including the one here, to the arbitrator. As such, it was not for the district court to determine whether the agreement is illusory and unconscionable.

---

[7] The $125 fee is hardly insurmountable, as we previously held in *Larsen* that a $150 filing fee is not unconscionable. 871 F.3d at 1315–16.

19

Second, the Wachovia Agreement is neither illusory nor unconscionable. There is no need to remand for state-specific analyses because Plaintiffs have not shown how state-by-state analyses would deliver a different result. Accordingly, we affirm.

**AFFIRMED.**