[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-11242

————————————————

D.C. Docket No. 0:19-cv-62843-AHS

BRAD TUCKMAN,

Plaintiff - Appellee,

versus

JPMORGAN CHASE BANK, N.A.,
JOHN TORRES,

Defendants - Appellants.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(August 3, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and SELF,*
District Judge.

PER CURIAM:

————————————————

* Honorable Tilman Eugene Self III, United States District Judge for the Middle District
of Georgia, sitting by designation.

After receiving motions for clarification from appellants JPMorgan Chase Bank and John Torres, we vacate our previous opinion and substitute the following in its place:

JPMorgan Chase Bank and John Torres appeal the denial of their motion to stay this action and compel arbitration under the Federal Arbitration Act. They argue that Brad Tuckman is required to arbitrate his civil racketeering and tort claims because the claims arise from an agreement that included an arbitration clause. But Tuckman did not sign the agreement as an individual, and no equitable doctrines allow Chase and Torres—also non-signatories—to enforce the agreement against him. Thus, we affirm.

## I.    BACKGROUND[1]

This case stems from a contract—titled the Depositor Funding Agreement ("DFA")—between Tuckman's LLC, Bird Film Fund ("BFF"), and two other companies who are not parties to this case: Forrest Capital Partners, Inc. and

---

[1] This case comes to us as an interlocutory appeal from the denial of a motion to compel arbitration that was filed before discovery began. As a result, the facts here are taken from allegations in Tuckman's complaint and documents attached to the parties' district court filings in support of and in opposition to the motion to compel arbitration. We may look to allegations in the complaint and evidence attached to the arbitration briefing for relevant factual background. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1364–67 (11th Cir. 2005).

Weathervane Productions, Inc. Forrest's principal is Benjamin McConley. Weathervane's principal is Jason Van Eman.

The DFA was a financing plan for a motion picture project produced by Tuckman's wife. Tuckman, McConley, and Van Eman each signed the DFA on behalf of their respective companies. The DFA required BFF and Forrest to contribute $1.85 million each to a secure Chase account and Weathervane to obtain a $3.7 million line of credit for the project. The DFA also contained an arbitration provision. The arbitration provision provided, among other things, that "[a]ny dispute, claim or controversy arising out of or relating to [the DFA] . . . shall be determined by binding arbitration in Miami, Florida before one arbitrator selected pursuant to the JAMS[2] rules and procedures." Doc. 40-2 at 8.[3]

Before sending BFF's contribution, Tuckman requested confirmation from Chase that the account was secure. Torres, then a Chase employee, provided that assurance through a letter and by email. Based on those assurances, Tuckman wired $1.85 million to the Chase account. But Weathervane and Forrest failed to satisfy their obligations under the DFA.

After Weathervane and Forrest breached the DFA, all three parties agreed to modify its terms. The modified agreement—the "Settlement and Forbearance

---

[2] JAMS is a private alternative dispute resolution provider. *About Us*, JAMS, https://www.jamsadr.com/about/ (last visited June 17, 2021).

[3] "Doc." numbers refer to the district court's docket entries.

Agreement"—acknowledged that Forrest and Weathervane had breached the DFA and set out revised payment requirements. The Settlement Agreement also stated that if Forrest or Weathervane breached its terms, or the unmodified terms of the DFA, BFF would be entitled to a predetermined consent judgement of over two and a half million dollars. The consent judgment was attached to the Settlement Agreement. Ultimately, Forrest and Weathervane failed to meet the obligations of both agreements, and BFF obtained the consent judgment against Forrest, Weathervane, and McConley in Florida state court.

After BFF obtained the consent judgment, Tuckman, in his individual capacity, filed the instant suit against Chase, Torres, and another bank that is not party to this appeal in federal district court. Tuckman's complaint maintained that the entire agreement was a fraud, that Van Eman and McConley stole his $1.85 million with no intention of fulfilling their end of the bargain, and that Torres was an active participant in the scheme. Based on these facts, Tuckman alleged state tort and federal RICO claims against each of the defendants.

In response to the lawsuit, Chase moved to compel arbitration under the DFA's arbitration clause, and Torres joined the motion. Chase and Torres argued that the DFA applied to Tuckman's claims because he was seeking to recover losses that BFF incurred, and BFF was party to the DFA. According to Chase and Torres, because the arbitration clause required BFF to arbitrate any dispute

emanating from the DFA, Tuckman's dispute with Chase and Torres about their roles in the alleged fraud was covered by the clause. In response, Tuckman argued that none of the parties to the lawsuit was a party to the DFA, and therefore Chase and Torres could not compel arbitration under the agreement's arbitration clause.

The district court agreed with Tuckman that neither he nor Chase nor Torres was a party to the DFA. It also concluded that Tuckman's "claims are well outside the scope of the arbitration clause" in the DFA. Doc. 85 at 6. Despite a strong presumption in favor of arbitration, the district court noted, "[f]ederal policy cannot serve to stretch a contract beyond the scope originally intended by the parties." *Id.* (internal quotation marks omitted) (quoting *Seaboard C.L.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir. 1982)). It therefore denied the motion.

This is Chase and Torres's appeal.[4]

## II.    STANDARD OF REVIEW

We review a denial of a motion to compel arbitration *de novo*. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018). In doing so, "we apply the federal substantive law of arbitrability, which is applicable to any arbitration agreement within the coverage of the FAA," keeping in mind the

---

[4] Although not final decisions on the merits, denials of motions to compel arbitration are immediately appealable under 9 U.S.C § 16(a)(1).

"healthy regard for the federal policy favoring arbitration." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (alteration adopted) (internal quotation marks omitted). Arbitration is, however, a matter of contract, and "the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). The issue of whether a non-signatory to an agreement can invoke an arbitration clause is controlled by state law. *See Lawson,* 648 F.3d at 1170–71 ("[T]raditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (internal quotation marks omitted)). The parties agree that Florida law applies to this dispute.

### III.   ANALYSIS

On appeal, Chase and Torres argue that Tuckman is subject to the DFA's arbitration clause.[5] First, they maintain that Tuckman is a party to the DFA.

---

[5] Chase and Torres make two kinds of arguments:  threshold arguments about who should decide the question of arbitrability and merits arguments about why this dispute is arbitrable.  As to the former, they cite a delegation provision in the DFA that assigns the resolution of "disputes over . . . who are proper Parties to the Arbitration" to an arbitrator.  When a contract contains a delegation provision, we retain jurisdiction only to review a challenge to the delegation provision, if one is made.  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2016).  We may turn to the merits issue only if we conclude that the delegation provision is invalid or unenforceable.  *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1334–35 (11th Cir. 2016).  Tuckman has challenged the delegation provision, and we agree with his contention that the

Second, they contend that even if Tuckman is not a party to the DFA, they can still enforce the arbitration agreement against him because Florida law allows nonparties to an arbitration agreement to compel other nonparties to arbitrate under certain circumstances. We address each argument in turn.

## A. Tuckman Is Not a Party to the DFA.

Chase and Torres attempt to tie Tuckman to the DFA by arguing that he signed the DFA in his individual capacity. They also argue that, even if Tuckman did not sign the DFA on his own behalf, he is a party to the contract through a corporate veil-piercing theory. We cannot agree.

### i.     Tuckman Did Not Sign the DFA as an Individual.

Chase and Torres begin by arguing that Tuckman was an individual signatory to the DFA. To support this argument, they point to Section 8 of the agreement, which states that each of the three companies that is a party to the agreement will have one person serve as signatory on the Chase project bank account. Their argument goes like this: Tuckman is listed as BFF's signatory. Section 8 also says the "signatories specifically agree to the terms set forth in this [s]ection." Doc. 40-2 at 4. One of those terms is that the account "shall operate in

---

provision is unenforceable here. Because the enforceability of the delegation provision turns on the same principles of law as the enforceability of the arbitration clause generally, we discuss the issues together. *Cf. Shockley v. PrimeLending*, 929 F.3d 1012, 1020 (8th Cir. 2019) ("The arbitration provision['s] . . . validity requires the same proof of the elements of a valid contract as the delegation provision.").

accordance with the written relevant account operation mechanics as required by Chase and the provisions of this Agreement." *Id.* Because Tuckman agreed to be individually bound by Section 8, and Section 8 stated that the project account was subject to all terms of the agreement, Tuckman is individually bound by the entire agreement. We reject Chase and Torres's arguments.

Several portions of the DFA make clear that only BFF, and not Tuckman, is bound by the agreement's contents. The signature page of the agreement lists BFF, not Tuckman, as a party to the agreement. Tuckman's name is on the signature line, but only in his capacity as the managing member of BFF with the authority to bind the company, not as an individual. *See Johnson v. Pires*, 968 So. 2d 700, 701 (Fla. Dist. Ct. App. 2007) (concluding plaintiff could not be forced to arbitrate based on an arbitration provision in a contract that he signed as an officer of a corporation). Indeed, Section 14 of the agreement states explicitly that the individuals who signed the agreement "acted as representatives for the Parties"— not in their personal capacities. Doc. 40-2 at 9. That section also states that "all legal actions and remedies sought under this Agreement shall only be between the corporate entities listed in this Agreement and not the individuals of those organizations." *Id.* Chase and Torres would have us disregard these clear indications that Tuckman was not an individual signatory and instead rely

8

exclusively on the language of Section 8 to conclude the opposite. We decline to take up their invitation. But even if we did, their argument would fail.

Section 8 governs the logistics of running the project's bank account. The bank account requires approved individual signatories, and Section 8 designates those signatories, one of whom is Tuckman. Chase and Torres are correct that, as a signatory, Tuckman agreed to follow the terms set forth in Section 8. They are also correct that Section 8 states that the account "shall operate in accordance with the written relevant account operation mechanics as required by . . . the provisions of this Agreement." Doc. 40-2 at 4. But all this language requires is that Tuckman—in his capacity as a signatory on the account—follow the account operation mechanics of the agreement. It does not make him an individual party to the rest of the agreement, including the binding arbitration clause.

Based on the plain text of Section 8, as well as other portions of the agreement, we conclude that Tuckman signed the DFA as a representative of BFF, not in his individual capacity. Chase and Torres's argument that Tuckman agreed to be bound by the DFA therefore fails.

### ii.     Tuckman Is Not Subject to the DFA Under a Veil-piercing Theory.

Chase and Torres next attempt to show Tuckman is a party to the DFA by arguing that we should pierce BFF's corporate veil. Again, we disagree.

Under Florida law, to pierce the corporate veil an opposing party must prove:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence[] was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (internal quotation marks and emphasis omitted). Examples of improper purposes include preventing assets from being seized as the result of a tax lien, *Eckhardt v. United States*, 463 F. App'x 852 (11th Cir. 2012) (unpublished), violating a duty of honesty and fair dealing, *Futch v. Head*, 511 So. 2d 314, 322 (Fla. Dist. Ct. App. 1987), or violating a contract, *Bellairs v. Mohrmann*, 716 So. 2d 320 (Fla. Dist. Ct. App. 1998).

As to the first criterion, Chase and Torres maintain that undisputed record evidence proves Tuckman acted as BFF's managing member and sole principal and that these facts are sufficient to show domination and control. Regarding the second, Chase and Torres argue that Tuckman improperly used BFF as an alter ego in an attempt to gain two judgments—one in the name of the company, which was awarded by consent in the state court action, and one as an individual, which he is pursuing in this case. And for the third criterion, they maintain that they will be

10

injured by this improper purpose if they are denied the ability to arbitrate a claim that would otherwise be arbitrable.

The second element is where Chase and Torres stumble. Even assuming they are correct that Tuckman had sufficient domination and control to make him BFF's alter ego, they have made no showing that he used the corporate form for an improper or fraudulent purpose. Tuckman formed BFF for a legitimate business purpose—funding his wife's film project. When that project failed, allegedly because of fraud, he dissolved the company. We cannot see how this is an improper purpose, and it certainly does not amount to the kind of circumscribed conduct that leads Florida courts to pierce the corporate veil. This attempt to link Tuckman individually to the DFA thus also fails.

### B. Florida Law Does Not Allow Nonparties to Enforce Arbitration Clauses Against Nonparties.

Alternatively, Chase and Torres maintain that, regardless of whether Tuckman is a party to the DFA, he can be compelled to arbitrate under the doctrine of equitable estoppel. They provide no case that supports this contention, however, nor have we found one. The cases on which they rely involve at least one party in privity with a signatory to the contract. *See Giller v. Cafeteria of S. Beach Ltd.*, 967 So. 2d 240, 241 (Fla. Dist. Ct. App. 2007); *United Contractors, Inc. v. United Constr. Corp.*, 187 So. 2d 695, 702 (Fla. Dist. Ct. App. 1996). For example, *Giller*, discussed by both Chase and Torres at oral argument, involved a claim for

11

professional malpractice brought by Cafeteria of South Beach against an architect, Ira Giller. 967 So. 2d at 241. Cafeteria's suit was based on a professional services contract between Giller's architecture firm and another company—ALP Management, LLC. *Id.* Prior to bringing the suit, Cafeteria had taken over ALP's interest in the contract. *Id.* Giller moved to compel arbitration under the contract, and Cafeteria opposed. *Id.* Despite the fact that neither party was a signatory, the court determined that Cafeteria could be forced to arbitrate because it had taken over another company's interest and was attempting to enforce the benefits of the contract. *Id.* at 242. And in *United Contractors*, the court relied on similar contractual privity to determine an arbitration clause was enforceable. 187 So. 2d at 702 (determining one non-party could compel arbitration against another because the parties "stood in contractual relationship each with the other" through rights "derived . . . from their predecessors in title").

Here, neither Chase nor Torres is a successor to Forrest's or Weathervane's interest under the agreement. Absent that legal relationship, they cannot invoke rights under the agreement against another non-signatory.[6] Therefore, Chase and Torres cannot compel arbitration under the DFA's arbitration clause.

---

[6] In an attempt to get us to look past this dilemma, Chase and Torres argue that BFF, not Tuckman, is the proper plaintiff in this case because BFF, not Tuckman, suffered the alleged injury. But Tuckman alleged in his complaint that he was injured by the fraud and that his personal funds were used to finance the project—allegations we assume to be true at this stage of the case. And whether Tuckman can state claims for relief under RICO and state tort law are merits questions, not questions of arbitrability, and thus are not before us today.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's decision to deny the motion to compel binding arbitration.[7]

**AFFIRMED.**

---

[7] Currently before the panel are JPMorgan's "Motion to Clarify" and Torres's "Motion for Clarification." Both motions are GRANTED.